UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES,                                               :
                                                             :
          -against-                                  :
                                                             :    MEMORANDUM & ORDER
JAMES BAYFIELD,                                              :
                                                             :    14-CR-356 (ENV)
                              Defendant.        :
                                                             :
------------------------------------------------------------ :
                                                             x

VITALIANO, D.J.

      On October 26, 2018, defendant James Bayfield was sentenced to 21 months' imprisonment after a jury found him guilty of three counts of bank fraud and one count of conspiracy to commit bank and wire fraud. *See* Judgment, Dkt. 424. Bayfield is currently incarcerated at the Brooklyn Metropolitan Detention Center ("MDC"), but he is scheduled to be transferred to a halfway house—the Brooklyn Residential Reentry Center ("Brooklyn RRC")—on this date. Def.'s Mot., Dkt. 472, at 1–2; Gov't Opp'n, Dkt. 474, at 1, 2 n.1. It appears to be the understanding of the parties that, absent unforeseen circumstances, less than two months later, he will be transferred again to serve the remainder of his custodial sentence on home confinement, which is scheduled to end on September 6, 2020. Def.'s Mot. at 1. But, as a claimed consequence of the COVID-19 pandemic, Bayfield moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on May 1, 2020, arguing that, due to his obesity and hypertension, he faces a high risk of suffering serious complications from COVID-19 and should be released to home confinement immediately. *Id.* at 1–3. The Court understands Bayfield's claim to apply to conditions at both MDC and the Brooklyn RRC. The government opposes Bayfield's motion. Gov't Opp'n at 1. The Court held oral argument on May 18, 2020. For the reasons that follow, Bayfield's motion is denied.

1

Discussion

Because Bayfield has exhausted his administrative remedies, Bayfield's motion is considered solely on the merits.[1]  Under § 3582(c), a sentencing court may reduce a defendant's sentence and order release if it finds that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  U.S.S.G. § 1B1.13 provides guidance as to what constitutes an "extraordinary and compelling reason," which includes: (i) serious/terminal illness, (ii) age of at least 65 plus serious deterioration of physical/mental health, (iii) family circumstances, such as the death of a minor child's caregiver, or (iv) "other reasons."  *See* U.S.S.G. § 1B1.13 Application Note 1.  U.S.S.G. § 1B1.13 provides further that defendant must not be a danger to the community and that the decision must be made in conjunction with the § 3553(a) factors and the applicable policy statements issued by the Sentencing Commission.  *Id.*

Bayfield, aged 48 at the time of this decision, argues that the dangers posed by his obesity and hypertension in conjunction with the ongoing COVID-19 pandemic constitute an extraordinary and compelling reason for his release.  The Court recognizes, of course, that there is some merit to Bayfield's concerns.  The Centers for Disease Control and Prevention recognize severe obesity as a condition that places individuals at a higher than average risk of suffering from COVID-19 complications and also note that a history of hypertension is associated with

---

[1] Under the First Step Act's amendments to § 3582(c)(1)(A), courts may reduce a term of imprisonment upon defendant's own motion after either (i) the Bureau of Prisons ("BOP") denies defendant's request that BOP file a motion on his behalf or (ii) if 30 days have passed since the warden of defendant's facility received his request that BOP file a motion on his behalf, whichever is earlier.  18 U.S.C. § 3582(c)(1)(A)(i).  Bayfield represents that he emailed a letter addressed to the acting warden of MDC to BOP counsel on April 3, 2020, but after receiving confirmation from BOP that the letter had been "forwarded to the appropriate department," he received no further response.  *See* Def.'s Mot. at 2 n.1; Def.'s Ltr., Dkt. 473.  Because BOP confirmed receipt over 30 days ago, Bayfield has exhausted his administrative remedies.

2

"increased illness severity and adverse outcomes." *See Groups at Higher Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 21, 2020); *Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19)*, CENTERS FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last visited May 21, 2020).

      Nevertheless, the fact that Bayfield has these conditions is by no means a guarantee for early release. Indeed, some courts have denied early release to inmates as old and older than Bayfield with these same ailments, citing facts that cut against Bayfield's view of the risks he faces. *See, e.g.*, *United States v. Hull*, No. 3:17-CR-132 (SRU), 2020 WL 2475639, at *3 (D. Conn. May 13, 2020) (denying release to 63-year-old inmate with hypertension, noting that the CDC recognizes only pulmonary hypertension as a comorbidity, not regular hypertension); *United States v. Kupa*, No. 3:11-CR-00345 (ERK), 2020 WL 2404856, at *1 (E.D.N.Y. May 12, 2020) (denying release to inmate with hypertension and obesity, noting that obesity "is not among the top 10 leading co-morbidity factors for COVID-19 . . . [and] of the total number of deaths from COVID-19 in New York State (21,640), 3.6%, or 769, were in the defendant's age range (40–49)").

      The dispositive factor on Bayfield's motion, however, is that Bayfield has brought forth no indication that he is at greater risk of contracting COVID-19 at the Brooklyn RRC than he would be on home confinement. In support of his motion, Bayfield cites a Washington Post article suggesting that at some undefined point two inmates at the Brooklyn RRC contracted COVID-19 and that the facility was not taking proper precautions to protect inmates. Shayna Jacobs, *N.Y. Halfway House Hit by Coronavirus Balked at Judge's Order to Release At-Risk*

3

*Inmate, His Lawyers Say*, WASH. POST (Apr. 1, 2020), https://www.washingtonpost.com/world/national-security/coronavirus-brooklyn-halfway-house-bureau-of-prisons/2020/04/01/45a38912-737b-11ea-87da-77a8136c1a6d_story.html. But, Bayfield's article is over a month old now, and more recent information suggests that the conditions at the Brooklyn RRC do not place Bayfield at a significant risk of contracting COVID-19.

In particular, the Residential Reentry Manager of the Brooklyn RRC affirmed in an affidavit that as of April 28, 2020 "there are no known active COVID-19 cases at the RRC Brooklyn location and that no inmates are on quarantine for suspected or presumptive COVID-19." *United States v. Soliman*, No. 17-CR-007 (ERK), 2020 WL 2329266, at *1 (E.D.N.Y. May 11, 2020) (quoting Residential Reentry Manager affidavit)). Furthermore, the Residential Reentry Manager stated that "although Brooklyn RRC typically has approximately 160 inmates, Brooklyn RRC has placed many inmates in home confinement or on home pass, and thus, there are currently only 32 inmates living at the Brooklyn RRC." *Id.* Finally, as the government notes in its opposition papers, the Brooklyn RRC appears to be taking precautions to prevent the spread of COVID-19. For example, while there was a total of seven positive or presumed positive COVID-19 cases, those inmates were ordered to complete a 14-day quarantine or moved to home confinement or home pass in order to prevent the spread. Gov't Opp'n at 2 n.1, 5–6. Only one of those seven inmates remains at the Brooklyn RRC, and his infection is no longer active since he has successfully completed a 14-day quarantine. *Id.* at 2 n.1. Bayfield offers no facts in response to these representations.

Lastly, the Court considers the § 3553(a) factors, and finds that they too militate against early release. 18 U.S.C. § 3553(a) provides that a sentence should be sufficient but not greater

4

than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant. Bayfield correctly points out that his crime was non-violent and that he has no prior criminal history, but he cannot dispel the fact that his crime—engaging in a pernicious scheme to defraud home mortgage lenders that wreaked havoc on an economically challenged neighborhood, leaving homes and homeowners there in great distress financially and psychologically—had an enormous negative effect on both the individuals who trusted him and the community at large. In light of the seriousness of his offense, the § 3553(a) factors would not be served if Bayfield were granted an early release.

## Conclusion

For the foregoing reason, the Court finds that, balancing the totality of circumstances, the release sought by Bayfield is not justified under 18 U.S.C. § 3582(c)(1)(A). His motion is, therefore, denied.

So Ordered.

Dated: Brooklyn, New York
May 21, 2020

/s/ENV
ERIC N. VITALIANO
United States District Judge